UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
No. 95-40299

IMOGENE WARNER,

                                  Plaintiff - Appellee,

versus

WAL-MART STORES, INC., doing business as SAM'S CLUB,

                                  Defendant - Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas
(1:94-CV-71)
_____

June 12, 1996

Before DUHÉ, BARKSDALE, and DeMOSS, Circuit Judges.

PER CURIAM:[*]

In this premises liability action arising out of injury to Imogene Warner in the parking lot of Wal-Mart Stores, Inc., doing business as Sam's Club (Sam's), in Beaumont, Texas, when robbed by two escaped prisoners, the principal issue at hand is whether there is sufficient evidence of cause in fact, a necessary part of the proximate cause element for negligence under Texas law. Along this line, Sam's pre- and post-verdict motions for judgment as a matter of law were denied. We **REVERSE** and **RENDER**.

---

[*]     Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

After shopping at Sam's in the early afternoon of November 22, 1993, Warner began to enter her automobile, which was located near the back of the busy parking lot of Sam's. The lot was located near an interstate highway. She was grabbed by the throat, from behind, by one of two escaped prisoners who had been hiding by her vehicle. The prisoners were dressed in regular, not prison, clothing. One prisoner demanded her keys, they struggled, and he pushed her to the ground. Because she was being choked, Warner was unable to call for help and could not summon assistance until after the prisoners were in her vehicle. Warner then screamed; according to her estimation, at least a dozen shoppers came to her aid. The two escaped prisoners drove away in her car.

Warner sued in state court, claiming that the omissions of Sam's were a cause of her injury while on its premises; Sam's removed the action to federal court; and, after a two-day trial, a jury returned a verdict for Warner, awarding her $10,000 for compensatory damages. Motions by Sam's before and after the verdict for judgment as a matter of law were denied.

## II.

At issue is whether, *inter alia*, the trial court erred in denying Sam's a judgment as a matter of law. Along that line, Sam's asserts that no reasonable juror could have found that its actions were a proximate cause of Warner's injuries.[1]

---

[1] Because we reverse on the basis of cause in fact, we do not reach Sam's other claims: that it did not have a duty as a matter of law to prevent Warner's injury; that it did not breach a duty to

We review *de novo* the denial of a judgment as a matter of law, applying the well-known standard stated in FED. R. CIV. P. 50, as illumined by *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (judgment as matter of law proper if no rational trier of fact could find for the nonmoving party). Toward that end, "[a]ll the evidence with all reasonable inferences is considered in the light most favorable to the party opposed to the motion". *Crosthwait Equip. Co., Inc. v. John Deere Co.*, 992 F.2d 525, 528 (5th Cir.), *cert. denied*, __ U.S.__, 114 S. Ct. 549 (1993).

In this diversity action, Texas law controls. "Initially we note that common law negligence consists of three elements 1) a legal duty owed by one person to another, 2) a breach of that duty, and 3) damages proximately resulting from the breach." *Berry Property Management v. Bliskey*, 850 S.W.2d 644, 653 (Tex. App. 1993) (quoting *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987)).

For the duty element, a business invitor bears a "duty to protect invitees on the premises from criminal acts of third parties if the landowner knows or has reason to know of an unreasonable risk of harm to the invitee". *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex. 1993). In that regard, Sam's had a duty to protect Warner if the harm she suffered was foreseeable to it and if it had control over the security measures at issue. *Washington v. R.T.C.*, 68 F.3d 935 (5th Cir. 1995). For this two-part duty

---

her; and that the court erred by allowing improper closing argument.

test, it is undisputed that Sam's had control over security; and, in seeking to satisfy the other prong, Warner offered evidence, such as police call reports, on the subject of foreseeability of a violent crime.

But, we need not address either the duty or breach of duty elements of Warner's negligence claim, because it fails as to another essential element, proximate cause. Proximate cause rests on two bases: foreseeability and cause in fact. *E.g.*, **Nixon v. Mr. Property Management Co.**, 690 S.W.2d 546, 549 (Tex. 1985); **Missouri Pac. R. Co. v. American Statesman**, 552 S.W.2d 99, 103 (Tex. 1977). "Foreseeability is satisfied by showing that the actor as a person of ordinary intelligence should have anticipated the danger to others by his negligent act." **Missouri Pac. R. Co.**, 552 S.W.2d at 103. "Cause in fact ... means that the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred." **Id.**

To prove that Sam's "act or omission was a substantial factor in bringing about [her] injury and without which no harm would have been incurred", Warner relied primarily on expert testimony that Sam's failure to "harden the target" of its premises to crime was a cause of her injury. That expert explained the concept as follows:

> ... [Assume] I had burglar bars on my home and an alarm and proper lighting and kept the shrubberies cut back and all; and [my neighbor] didn't. Then I have something that's called hardening the target.... It means that my home is less desirable for someone who is determined to commit crime to try to get into my home, and they go to [my

- 4 -

neighbors'] next door who did not have these items.

Even though the expert used this example concerning making one site less desirable for committing a crime than another, he did not investigate what security measures were being utilized by other retail establishments in the area at this point in time during the day. In fact, when asked whether Sam's "fell below community standards for [the] time of day in this particular area", he replied that he "wasn't concerned with community standards".

In support of the expert's theory, Warner presented the testimony of the Sam's manager regarding the security measures -- camera surveillance and patrols -- used *inside the store* to try to prevent shoplifting. The manager testified that the cameras and patrolling deterred shoplifting "some", and his testimony on this point was limited to their use within the store.[2] (The manager testified further that the police patrolled the parking lot on occasion and that they were responsive to calls from the store, arriving quickly when called to the premises.)

Warner's expert testified that he could see nothing that Sam's had done to "harden the target" of its parking lot to a crime like that involving Warner. Its main omission, in his opinion, was not providing "a security patrol officer[,] someone in a distinctive

_____

[2]    Warner urges on appeal that the manager testified that the use of cameras and employee patrols constituted a "cost effective way to deter crime". However, our review of the record reveals that the manager spoke only to the effectiveness of these measures to deter *in-store shoplifting*. The suggestion that the manager testified that these measures would have been effective devices to deter an assault outside the store is not supported by the record.

uniform that would be a detriment to someone who would try to come in and do what's called an opportunity crime, grab the keys away from a female and attempt to steal her car". But, when asked whether Sam's could have prevented the harm to Warner by taking these steps, the expert testified that he could not say that the attack on Warner was "stoppable".

Warner's expert could not state any specific security measure that, had it been performed by Sam's, would have prevented Warner's injury. The prisoners had escaped by driving away in a dump truck while their supervisor was completing the paper work for the asphalt the three were obtaining. No evidence was offered to show that any attribute of the premises resulting from Sam's omissions had in fact made it attractive to the escaped prisoners. For example, there was no evidence to suggest that the escaped prisoners perused several sites while driving a stolen dump truck, searching out a soft target.[3]

---

[3] In closing argument, Warner's counsel stated that, before coming to the Sam's parking lot, the escaped prisoners were at another, named shopping center. Warner's counsel then urged the jury to consider that Warner's attackers had not stolen a car there, but rather traveled to Sam's to do so. Although counsel prefaced his statement with "the records will show", our review of the record on appeal reveals no evidence, neither testimony nor exhibits, of the escaped prisoners being at another shopping center, except for the following speculative deposition testimony by Warner, which Sam's placed in evidence:

> A. I think they walked from Gateway Shopping Center; but now that, I don't know.
>
> Q. Okay.
>
> A. I do not know. They're no -- I do not know.

Warner's expert referred several times to the absence of a uniformed security patrol officer in the Sam's parking lot; but, when asked, he did not say that such an officer could have prevented the injuries to Warner or that, considering the nature of the attack, an officer could have even detected the escapees, who were dressed in regular clothing and went undetected by everyone else in the parking lot on a busy shopping day. Nothing in the record indicates that a security guard could have been any more aware of Warner's peril than the dozen shoppers who came to her aid only after she was able to call out for help. For example, Warner did not even present evidence concerning the size of the parking lot.

As noted, Warner's "target hardening" theory, that Sam's failed to make its parking lot comparatively less welcome to crime than other areas, was not supported by evidence comparing security measures employed by Sam's with community standards, or by comparing its security to that on neighboring premises. Thus,

_____

Q. And that's fine. If you don't know, that's a perfect answer.

   Did anyone who came up to you that day, any of the three customers or anyone you spoke with since that time, ever tell you that they had seen either of these two people before or that they saw them in the parking lot before you were attacked?

A. They saw them, I believe. I believe I heard them say. I am not sure, now.

That this testimony is of no evidentiary value is reflected by the fact that Warner does not rely upon it, for cause in fact or otherwise, in her brief here.

although the example provided by Warner's expert to explain the concept of target hardening was a comparison of two homes, there was no evidence that would have allowed the jury to make such a comparison of the parking lot security at Sam's with other premises.  Without some evidence of "harder targets" than the busy Sam's parking lot, the theory simply did not provide a basis for a reasonable jury to find cause in fact.[4]

In **Nixon**, the Texas supreme court reversed a summary judgment awarded the property owner, concluding, *inter alia*, that a genuine issue of material fact existed as to cause in fact where the owner's failure to secure a vacant unit in its apartment building was urged as a proximate cause of the injury a child received when abducted, carried to the building, and raped.  Based on evidence that the child was taken directly to the vacant apartment, the court held that a reasonable inference existed that "the assailant

---

[4]     It appears that this lack of evidence resulted, in part, because of comments by the trial judge when counsel for Sam's was questioning Warner's expert on the critical cause in fact element. The trial judge would not allow counsel for Sam's to directly question the expert regarding this aspect of proximate cause.  When counsel asked him to admit that he could not "tell this jury that [Sam's] engaged in any conduct that caused what happened to Mrs. Warner on the back of the parking lot", the court, *sua sponte*, prevented an answer on this critical element of the negligence claim, stating: "Nobody is accusing [Sam's] of having caused it. They are being accused of not using ordinary care or reasonable care to prevent it....  Or responsibility that they have to their customers."

Unfortunately, counsel for Sam's failed to remind the court of the separate elements of the claim.  The court's comments were directed more toward duty and breach of that duty than at counsel's line of inquiry on cause in fact.  Moreover, the court compounded the problem by immediately adding: "Now, why do you have to argue something that [] ... doesn't even touch on the responsibility of ... Sam's Club".

was acutely aware of the vacant unit's existence and embarked upon his course of criminal conduct at this particular time and place knowing that this unit was an easily accessible place in which to perpetrate this assault in isolation." *Nixon*, 690 S.W.2d at 549.

In stark contrast to that case, no similar inference is reasonable here, because no evidence suggested that the prisoners thought the well-populated parking lot at Sam's in broad daylight would be an ideal location to perpetrate an assault in isolation. In addition, unlike the *Nixon* assailant's direct transport of the victim to the apartment, suggesting his prior determination that conditions there would help him commit his crime without detection, there is no evidence that the prisoners had selected Sam's for a similar reason.

In *E-Z Mart Stores, Inc. v. Havner*, 832 S.W.2d 368 (Tex.App.-- Texarkana 1992), the court rejected opinion testimony that the store's failure to use an alarm system was a cause of injuries to Havner, who was found dead after disappearing from her job at the store. *Id*. at 369. Although an expert testified that an alarm system could have summoned police to the scene to protect Havner, the court concluded that "far too little" was known about "the causes or motivations behind the criminal acts committed" to hold the evidence factually sufficient to establish cause in fact. *Id*. at 374. As in *Havner*, there is no direct evidence of what motivated the escaped prisoners to choose Sam's for their crime. And, in contrast to *Nixon*, no indirect evidence regarding the manner in which the escaped prisoners acted supports a reasonable

- 9 -

inference that they were attracted to the site by any act or omission of Sam's.

As discussed, to prove cause in fact, Warner was required to prove, *inter alia*, "that the negligent act or omission [of Sam's] was a substantial factor in bringing about [her] injury and without which no harm would have been incurred." ***Nixon***, 690 S.W.2d at 549. In sum, there is a failure of proof (1) that the act or omission of Sam's was such a substantial factor, and (2) that without such act or omission, the injury, more likely than not, would not have been incurred. On this evidence, no reasonable inference can be drawn from the behavior of the escaped prisoners suggesting that Sam's did, or failed to do, something but for which the escaped prisoners would have gone elsewhere. Accordingly, we must conclude that no reasonable juror could find cause in fact. Without that essential element, the requisite proximate cause is lacking.

### III.

For the foregoing reasons, the judgment is **REVERSED**, and judgment is **RENDERED** for Wal-Mart Stores, Inc., doing business as Sam's Club.

*REVERSED and RENDERED*